UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | | |
|---|---|---|
| DAWNITTA MITCHELL, | ) | |
| | ) | |
| PLAINTIFF | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EMERITUS MANAGEMENT, LLC *dba* EMERITUS ASSISTED LIVING, | ) ) ) | CIVIL NO. 07-90-P-H |
| | ) | |
| AND | ) | |
| | ) | |
| HARTFORD LIFE AND ACCIDENT INSURANCE COMPANY, | ) ) | |
| | ) | |
| DEFENDANTS | ) | |

**DECISION AND ORDER ON PLAINTIFF'S MOTION TO AMEND COMPLAINT AND DEFENDANTS' MOTIONS TO DISMISS**

If the facts as the plaintiff states them are true,[1] the outcome compelled by the governing statute and caselaw is very troubling. The plaintiff employee says that she purchased a life insurance policy on her husband through her employer's group coverage. When her husband was dying, she resigned her employment to care for him. She asked her employer for the proper forms to convert the group life insurance coverage to individual coverage, as she was entitled to do. Her employer refused or failed to provide the forms despite several in-person and

---

[1] This case is presented on motions to dismiss; I therefore must assume the truth of all well-pleaded facts in the complaint. See In re Credit Suisse First Boston Corp., 431 F.3d 36, 45 (1st Cir. 2005). Neither defendant has yet filed an answer to the complaint.

telephone requests. In the meantime, the time for conversion (31 days) expired, her husband died, and now the life insurance company has denied her any benefits. Sadly, I conclude that on these allegations, she is entitled to no relief against either the life insurance company or her employer.

## FACTUAL AND PROCEDURAL BACKGROUND

According to the First Amended Complaint, Emeritus Management, LLC ("Emeritus") employed the plaintiff Dawnitta Mitchell ("Mitchell") as the head cook at its assisted living facility in Englewood, Florida, beginning November 24, 2005. First Am. Compl. ¶ 8 (Docket Item 25-2). Emeritus offered employees group life insurance issued by Hartford Life and Accident Insurance Company ("Hartford Life"). Id. ¶ 9; Def. Hartford Life's Mot. to Dismiss, Ex. 1 ("The Plan") at 31 (Docket Item 14-2).[2] Mitchell purchased $25,000 of this life insurance on her husband, James Mitchell, naming herself the sole beneficiary. First Am. Compl. ¶¶ 9, 13; Pl.'s Mot. for Leave to Amend Compl., at 2–3 (Docket Item 25).

The Plan stated that Emeritus was the Plan Sponsor and the Plan Administrator. The Plan at 31. As Plan Administrator, Emeritus had "full authority, at its sole discretion, to terminate, suspend, withdraw, reduce, amend or modify the Plan, in whole or in part, at any time, without prior notice." Id. at 32. But simultaneously, Hartford Life had "full discretion and authority to

---

[2] The Complaint refers to the Plan, but does not attach it. The Plan is provided as an attachment to Hartford Life's motion to dismiss. "In deciding a motion to dismiss . . . a court may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint, without converting the motion into one for summary judgment." Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir. 1996).

determine eligibility for benefits and to construe and interpret all terms and provisions of the [Plan]." Id. at 17.

Under the Plan, life insurance coverage ceased at the end of employment, id. at 12, unless a conversion policy was obtained in a timely manner: "To convert life insurance, the individual must, within 31 days of the date group coverage terminates, make written application to . . . Us [defined elsewhere as Hartford Life] and pay the premium required for his age and class of risk." Id. at 17.

On November 4, 2006, Mitchell left her employment at Emeritus to care for her dying husband. First Am. Compl. ¶ 14. At the time of leaving, Mitchell met with her employer's benefits administrator and requested the necessary documents to convert the life insurance policy on her husband. Id. ¶ 15. The Emeritus benefits administrator informed her "that the paperwork was not ready and that she would receive a separation package containing all appropriate forms by mail." Id. ¶ 16. At that same time, Mitchell requested a copy of the Plan documents, but Emeritus failed to respond to this request. Id. ¶ 17. Mitchell returned to Emeritus once more in person, requesting the package of documents, but again was unable to obtain the conversion documents, only an assurance that they would be mailed. Id. ¶ 18. When Mitchell did not receive any conversion documents in the mail from Emeritus, she made several telephone calls to Emeritus asking for them. Id. ¶ 19. Ultimately, Mitchell did not receive the conversion documents from Emeritus within 31 days from the last day of her employment. Id. ¶¶ 23–24.

Mitchell's husband died January 10, 2007. Id. ¶ 23. At that time, Mitchell still had not received the requested life insurance conversion documents from Emeritus. Id. ¶ 24. After January 10, Mitchell did receive the necessary documents from Emeritus, completed them, and sent them back to Emeritus. Id. ¶¶ 23–25. On February 13, 2007, Mitchell received a letter from Hartford Life stating that it had received her conversion application but that Emeritus had failed to complete certain portions. Id., Ex. B—Letter from Hartford Life to Dawnitta Mitchell (Feb. 13, 2007) (Docket Item 25-4) ("We cannot process your application because Part A [ ] must be completed by a representative of your former employer"). This letter from Hartford Life also stated:

> The applicant is responsible for ensuring that we receive a response within 15 days from the date of this letter *or* 31 days from the date of group coverage termination, whichever is later. If we do not receive the necessary information within this time limit, portability will no longer be available.

Id. (emphasis in original). Mitchell contacted Emeritus to provide the missing information to Hartford Life, but Emeritus claimed it already had provided the information and refused to resubmit any information. Id. ¶¶ 27–28. Hartford Life then promised Mitchell that it would obtain the missing information from Emeritus. Id. ¶¶ 29–30.

On April 13, 2007, Hartford Life denied Mitchell's claim for life insurance benefits, stating that "the documentation submitted . . . does not establish James Mitchell was covered . . . at the time of his death." Id., Ex. C—Letter from Hartford Life to Dawnitta Mitchell, at 1 (April 13, 2007) (Docket Item 25-5).

4

Mitchell appealed this denial and received a final decision from Hartford Life on June 13, 2007, that confirmed denial of benefits. Id., Ex. D—Letter from Hartford Life to Thad B. Zmistowski (Attorney for Dawnitta Mitchell) (June 13, 2007) (Docket Item 25-6).

Mitchell then sued both Emeritus and Hartford Life under the Employee Retirement Income Security Act ("ERISA"), claiming breach of fiduciary duty and wrongful denial of benefits and information. She requested either "appropriate equitable relief" under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), or recovery of "benefits due to [her] under the terms of the plan." See First Am. Compl. ¶¶ 41–45. Emeritus and Hartford Life each moved to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

Initially, Mitchell agreed to dismiss her breach of fiduciary duty claim against both defendants. Pl.'s Mem. in Opp'n to Def. Hartford Life's Mot. to Dismiss, at 6 (Docket Item 20); Pl.'s Mem. in Opp'n to Def. Emeritus's Mot. to Dismiss, at 6 (Docket Item 21). In her more recent motion to amend her complaint, however, Mitchell reasserted this claim with a more specific request for "appropriate equitable relief." Pl.'s Mot. for Leave to Amend Compl., at 1–2 (Docket Item 25); First Am. Compl. ¶¶ 41–43. Emeritus and Hartford Life have urged me to deny Mitchell's motion to amend her complaint. Objection/Opp'n of Def. Emeritus to Pl.'s Mot. to Amend Compl. (Docket Items 26); Def. Hartford Life's Opp'n to Pl.'s Mot. for Leave to Amend Compl. (Docket Item 27). Even though "[f]utility of the amendment constitutes an adequate reason to deny the motion to amend," Todisco v. Verizon Commc'ns, Inc., 497 F.3d 95, 98 (1st Cir. 2007), I

**GRANT** Mitchell's motion to amend her complaint. But the amended complaint still does not suffice to state a claim under ERISA. I therefore **GRANT** Emeritus's and Hartford Life's motions to dismiss.

## ANALYSIS

According to the Supreme Court, ERISA's comprehensive and detailed remedial scheme is "strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly." Massachusetts Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) (emphasis in original). Thus I examine each of Mitchell's claims to see whether they fit within ERISA's explicit remedial scheme.

### *Count I: ERISA § 502(a)(3)*

ERISA section 502(a)(3) provides:

> A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

Under this provision, Mitchell requests "appropriate equitable relief" in the form of a three-part affirmative injunction that would operate against both Hartford Life and Emeritus:

> [The Plaintiff] requests that the Court enter an affirmative injunction (1) requiring Emeritus to complete the necessary paperwork in order to process Plaintiff's claim, (2) requiring Hartford to accept Plaintiff's claim as timely filed, (3) requiring Hartford to re-process Plaintiff's claim for benefits . . . .

First Am. Compl. ¶ 43. In other words, Mitchell wants me ultimately to order Hartford Life to pay her life insurance benefits.[3]

Section 502(a)(3) provides a remedy that acts as a "safety net" in ERISA's remedial scheme, allowing an individual to bring a claim for equitable relief when an adequate remedy is not otherwise available under ERISA. See Varity Corp. v. Howe, 516 U.S. 489, 512 (1996); Kourinos v. Interstate Brands Corp., 324 F. Supp.2d 105, 107 (D. Me. 2004). This "equitable relief" is available against plan "fiduciaries" to redress violations or to enforce provisions of ERISA or an ERISA plan. Mertens v. Hewitt Assocs., 508 U.S. 248, 253 (1993). Both Emeritus and Hartford Life are plan fiduciaries under the Plan.[4]

Unfortunately for Mitchell, however, the First Circuit decided in August that payment of life insurance benefits is not "equitable relief" under ERISA. Todisco, 497 F.3d at 99-100; see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002)(enforcement of contractual obligation to pay money is not relief "typically available in equity" as required under section 502(a)(3)). Although conceivably I could grant an injunction against Emeritus for the paperwork

---

[3] Pl.'s Mot. for Leave to Amend Compl., at 2:
> To clarify, Plaintiff seeks only those proceeds which are rightfully hers under the life insurance policy which she obtained on behalf of her late husband. Plaintiff is not seeking monetary damages in the traditional sense; rather, she only wants the Defendants to honor her claim and pay her the $25,000 which she is owed under the policy.

[4] The determinative characteristic of an ERISA fiduciary is the possession of some discretion regarding the plan. See Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113 (1989) ("one is a fiduciary to the extent he exercises *any* discretionary authority or control") (emphasis in original). Both Emeritus and Hartford Life possess some discretionary authority under the Plan. See The Plan at 32 (granting Emeritus the authority "to terminate, suspend, withdraw, reduce, amend or modify the Plan"); id. at 17 (granting Hartford Life "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions").

Mitchell requests, it would do her no good because ultimately this section of ERISA will not permit Mitchell to recover her life insurance benefits from Hartford Life.[5] The motions to dismiss count I are **GRANTED** for both Emeritus and Hartford Life.

### *Count II: ERISA § 502(a)(1)(B)*

ERISA section 502(a)(1)(B) permits a civil action to "be brought by a participant or beneficiary . . . to recover benefits due to him under the terms of [the] plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." "It is under this statutory provision that claims . . . challenging denials and termination of employer-sponsored . . . benefits are brought." Terry v. Bayer, 145 F.3d 28, 34 (1st Cir. 1998). Unfortunately for Mitchell, the terms of the Plan do not entitle her to benefits.

#### *(a) Hartford Life*

The standard of judicial review for denial of ERISA benefits depends on whether the plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone,

---

[5] Moreover, Mitchell makes no specific allegation that Hartford Life violated either ERISA or the Plan (Mitchell concedes that she did not file the conversion application within the time the Plan requires), a necessary requirement for relief under 502(a)(3). See Mertens, 508 U.S. at 253. "ERISA does not impose a fiduciary duty to pay benefits that are excluded under the plan." Kourinos, 324 F. Supp.2d at 108 (citing Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 200 (1st Cir. 1997)).

    Mitchell does allege sufficient facts to state a claim for breach of fiduciary duty against Emeritus, but not to obtain the relief she wants. Section 502(a)(3) allows equitable restitution, but only to "restore to the plaintiff *particular* funds or property in the defendant's possession." Great-West, 534 U.S. at 214 (emphasis added); Todisco, 497 F.3d at 99–100. Emeritus does not possess Mitchell's funds or property. Typically, equitable restitution is not available against an entity that has neither control nor possession of the funds in question. See Sereboff v. Mid Atl. Med. Servs., Inc., 126 S. Ct. 1869, 1874–76 (2006).

8

489 U.S. at 115. Here, Hartford Life has "full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Policy." The Plan at 17. Hartford Life makes the initial determination of eligibility, and handles any appeals through to a "final decision." Id. at 34-35. Therefore, Hartford Life's decision must be upheld unless "it is arbitrary, capricious, or an abuse of discretion. . . . Stated in different terms [it will be upheld] 'if the decision was reasoned and supported by substantial evidence,' meaning that the evidence 'is reasonably sufficient to support a conclusion and contrary evidence does not make the decision unreasonable.'" Morales-Alejandro v. Medical Card Sys., Inc., 486 F.3d 693, 698 (1st Cir. 2007) (quoting Denmark v. Liberty Life Assurance Co. of Boston, 481 F.3d 16, 33 (1st Cir. 2007)). Hartford Life's denial of life insurance benefits meets that standard.

In Todisco, a case much like this one, the First Circuit rejected a claim for benefits under section 502(a)(1)(B) when an employee made detrimental life insurance choices because of erroneous information his employer provided. The court ruled that benefits were unavailable because:

> the plan unambiguously stated that Mr. Todisco was ineligible to add supplemental life insurance without submitting a statement of health form [contrary to the employer's advice to the employee]. Since it is undisputed that he never submitted this form, Mrs. Todisco's claim for benefits is plainly not a suit for benefits *under the terms of the plan.* Instead, she expressly seeks benefits *not* authorized by the plan's terms.

497 F.3d at 101 (emphasis in original). Similarly here, although Emeritus failed to give Mitchell the forms she requested on a timely basis, the Plan's instructions and deadline on how to convert life insurance are unambiguous. The Plan

9

contains no exception to the 31-day deadline for filing a conversion application, Mitchell acknowledges that she failed to satisfy this unambiguous provision of the Plan.

Mitchell tries to escape the unfortunate result by pointing to Hartford Life's letter of February 13, 2007 (Docket Item 25–4), where Hartford Life intimated that a timely response to its letter might be enough. Before Mitchell received this letter, however, the deadline to file the conversion application had already expired, and thus her entitlement to benefits. Mitchell does not offer any legal theory by which Hartford Life's February 13 letter could excuse her earlier failure to meet the conversion time limit of the Plan.

Given the Plan language, Hartford Life's final decision to deny benefits was not arbitrary, capricious, or an abuse of discretion. Its motion to dismiss Count II is **GRANTED**.

### (b) *Emeritus*

Emeritus relinquished final decision-making authority regarding eligibility for disability benefits to Hartford Life. Nevertheless, Mitchell seeks recovery against Emeritus under section 502(a)(1)(B), alleging that the Plan "leaves other decisions and administrative functions to" Emeritus and that "[b]oth Emeritus and Hartford exercised discretion over the management of plan assets and/or exercised discretionary control over the administration of the plan." First Am. Compl. ¶¶ 11–12.

In the First Circuit "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." Terry, 145

<40><40>0 

<40>

<40><40>
<40>
<40><40><40>
F.3d at 36 (quoting <u>Garren v. John Hancock Mut. Life Ins. Co.</u>, 114 F.3d 186, 187 (11th Cir. 1997)); <u>Law v. Ernst & Young</u>, 956 F.2d 364, 372–73 (1st Cir. 1992); <u>Cintron-Serrano v. Bristol-Myers Squibb Puerto Rico, Inc.</u>, 497 F. Supp.2d 272, 276 (D.P.R. 2007).  Since Hartford Life controls the determination of eligibility for benefits under the Emeritus Plan ("full discretion and authority," The Plan at 17), Emeritus is not the proper defendant against which to seek a section 502(a)(1)(B) remedy, <u>i.e.</u>, benefits due under the Plan.[6]

Emeritus's motion to dismiss Count II is **GRANTED**.

## CONCLUSION

ERISA limits the remedies available to plan participants, a well-known and frequently noted reality that Congress has failed to alter.  If the factual allegations in Mitchell's First Amended Complaint are true, this case provides still another illustration of a deserving plaintiff denied a remedy—a plaintiff who apparently did everything reasonably to be expected of an employee, where fault (intentional or not) appears to lie with the employer.  But I follow the law as it has been interpreted by the Supreme Court and the First Circuit.

---

[6] "If an entity other than the named plan administrator makes the final benefits eligibility determination, then that entity functions as the plan administrator for purposes of an ERISA benefits claim." <u>Cintron-Serrano</u>, 497 F. Supp.2d at 276 (citing <u>Law</u>, 497 F.2d at 372–73); <u>Cook v. Liberty Life Assurance Co. of Boston</u>, 2002 WL 482572, *2 n.3 (D.N.H. 2002) (unpublished) (explaining that claims against either the plan itself or the plan administrator under section 502(a)(1)(B) are appropriate, if the plan administrator has the authority to pay benefits); <u>see</u> <u>also</u> <u>Mendes v. Jednak</u>, 92 F. Supp2d 58, 66 (D. Conn. 2000) ("Under ERISA, the proper party to a claim for benefits pursuant to an employee welfare benefit plan is the entity that made the eligibility decisions with respect to the plan."); Ronald J. Cooke, 2 <u>ERISA Practice and Procedure</u> § 8:7 (2007) ("The employer/sponsor is not a proper defendant for such a suit if it does not control or influence plan decisions.").

<145>
<145>1

**SO ORDERED.**

**DATED THIS 29TH DAY OF NOVEMBER, 2007**

/S/D. BROCK HORNBY
**D. BROCK HORNBY
UNITED STATES DISTRICT JUDGE**